**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**THIRD PARTY VERIFICATION, INC.,**

      **Plaintiff/Counter-Defendant,**

**-vs-**　　　　　　　　　　　　　　　　　　　　　　**Case No. 6:06-cv-415-Orl-22DAB**

**SIGNATURELINK, INC.,**
**CATTLEDRIVER, L.L.C., and**
**DAVE LISCUM,**

      **Defendants/Counter-claimants.**
_____

**ORDER**

This cause came on for consideration with oral argument[1] on the following motions filed herein:

> **MOTION:**　**PLAINTIFF'S SECOND MOTION TO COMPEL DISCOVERY (Doc. No. 63)**
>
> **FILED:**　**January 30, 2007**
> _____
>
> **THEREON** it is **ORDERED** that the motion is **GRANTED** as set forth herein.

> **MOTION:**　**[DEFENDANTS'] MOTION FOR PROTECTIVE ORDER [OF SOURCE CODE FOR ONLINE SIGNATURE GUARANTEE SOFTWARE] (Doc. No. 70)**
>
> **FILED:**　**February 26, 2007**
> _____
>
> **THEREON** it is **ORDERED** that the motion is **DENIED**.

---

[1] Oral argument was held on April 16, 2007.

| | |
|---|---|
| **MOTION:** | **MOTION FOR LEAVE TO FILE AFFIDAVIT OF WILLIAM HICKS (Doc. No. 71)** |
| **FILED:** | **February 28, 2007** |

**THEREON** it is **ORDERED** that the motion is **GRANTED**.

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S MOTION FOR EXTENSION OF TIME TO DISCLOSE EXPERT REPORT AND DISCOVERY DEADLINE (Doc. No. 74)** |
| **FILED:** | **March 30, 2007** |

**THEREON** it is **ORDERED** that the motion is **GRANTED** as set forth herein.

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S MOTION TO STRIKE EXPERT REPORT OR TO LIMIT OR BAR TESTIMONY BASED ON EXPERT REPORT (Doc. No. 78)** |
| **FILED:** | **April 11, 2007** |

**THEREON** it is **ORDERED** that the motion is **GRANTED** in part as set forth herein.

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S MOTION FOR STAY OF OBLIGATION TO RESPOND TO DEFENDANTS' DISCOVERY REQUESTS PENDING RESOLUTION OF PLAINTIFF'S SECOND MOTION TO COMPEL (Doc. No. 79)** |
| **FILED:** | **April 11, 2007** |

**THEREON** it is **ORDERED** that the motion is **GRANTED**.  A new schedule is set forth herein.

Plaintiff Third Party Verification is suing Defendants SignatureLink, CattleDriver, and Dave Liscum (collectively "SignatureLink") for a declaratory judgment that it is not infringing copyrights,

patents, or other intellectual property rights in "SignatureLink[2] Web Signature Software" that captures signatures for online transactions. Doc. No. 48 ¶¶ 5-7. SignatureLink contends in its counterclaim for copyright infringement that Third Party Verification acquired a copy of SignatureLink's source code, copied the program to suit their own needs via "reverse engineering" of the software[3], and sold it as "AssureSign Electronic Signature Technology." Doc. No. 54 ¶¶ 22, 23, 25. Central to the litigation is the source code that was allegedly reverse engineered. Third Party Verification seeks to compel SignatureLink to produce documents containing the copyrighted material upon which SignatureLink is relying to assert their counterclaim against Third Party Verification for copyright infringement. SignatureLink has yet to produce the complete or "deposit" source code[4] in response to Third Party's discovery requests. Third Party Verification also seeks to compel documents listed in an Amended Privilege Log dated January 9, 2007, and to stay its obligation to respond to SignatureLink's discovery until those responses are received.

Although SignatureLink "recognizes" in its Response "that a comparison of its software and ThirdParty Verification's software is necessary to determine the claims asserted in this lawsuit," it seeks a court-order to restrict access and the use of the source code and other "proprietary business and technical information" produced in discovery. Doc. No. 70 at 3. Third Party contends that

---

[2]The ownership of the copyrighted "SignatureLink Internet Signature Capture" source code between Defendants SignatureLink and CattleDriver is disputed by the parties, but not relevant to this discovery issue. Doc. No. 54-2 at 10 (transferring rights as of November 8, 2006); Doc. No. 48 ¶¶ 10-11.

[3]"[A]n important distinction to be emphasized is that reverse engineering, in addition to accessing nonprotectable ideas and functional elements, may also yield access to original expression. However, while the former may be unoriginal and not worthy of copyright protection, the latter, though original and hence copyrightable, may also be denied protection where its use is found to be 'fair' under 17 U.S.C. § 107." *Bateman v. Mnemonics, Inc.,* 79 F.3d 1532, 1540 (11th Cir. 1996).

[4]"Deposit" source code is the portion of the source code deposited with the Copyright Office pursuant to 37 C.F.R. § 202.20(c)(2)(vii).

SignatureLink has waived any objections and privileges it might have asserted and the source code should not be protected from full production.

**Background Facts**

On August 11, 2006, Third Party Verification served SignatureLink with its First Set of Interrogatories and its First Request for Production of Documents. *See* Doc. 41. SignatureLink failed to timely respond, and on Third Party Verification's Motion to Compel, the Court ordered SignatureLink on November 20, 2006 to serve their responses within eleven days and taxed motion costs against SignatureLink. Doc. No. 49. After extensions, SignatureLink finally produced on December 13, 2006 their responsive documents consisting of a total of thirty-six (36) pages. Doc. 63-2. In that paltry production, SignatureLink did not produce any documents containing the copyrighted material upon which SignatureLink bases its counterclaim against Third Party Verification for copyright infringement. On January 9, 2007, SignatureLink served an Amended Privilege Log to justify its privilege assertions.

On January 30, 2007, Third Party Verification filed this Second Motion to Compel seeking to compel production of the complete source code. Doc. No. 63. In response, on February 26, 2007, SignatureLink filed their Motion for Protective Order seeking to restrict the circumstances under which the source code for online signature guarantee software must be produced. Doc. No. 70. Third Party Verification filed its opposition to the Motion for Protective Order on March 2, 2007. Doc. No. 72. The matter came on for hearing on April 16, 2007.

As an initial matter, given SignatureLink' wholesale failure respond to discovery *or* respond to Third Party Verification's First Motion to Compel (*see* Doc. No. 49), SignatureLink has waived any objections to production of discovery sought in the First Motion to Compel. *See, e.g., Pulsecard, Inc. v. Discover Card Services, Inc.*, 168 F.R.D. 295, 302 (D. Kan. 1996) (objections not raised in

response to discovery requests are waived).  A party failing to serve an objection to a discovery request within the time required by Fed.R.Civ.P. 33 or 34, in the absence of good cause or of an extension of time to do so, waives the right to later raise objections.  Under Rule 33, "any ground not stated in a timely objection to an interrogatory is waived unless the party's failure to object is excused by the court for good cause shown."   Fed.R.Civ.P. 33(b)(4).  Rule 34 only allows thirty days to respond unless a different time is allowed by the court or agreed to in writing by the parties. Fed.R.Civ.P. 34(b).

On January 9, 2007, almost four months after its responses were due, SignatureLink served an Amended Privilege Log to justify its privilege assertions, asserting attorney-client privilege, work-product privilege, trade secret privilege, and the privilege of "confidential and proprietary business information" privilege.  *See* Doc. No. 63-6 to 63-8.  At the April 16, 2007 hearing, SignatureLink's counsel conceded it had waived its objections but maintained that it had not waived its privilege assertions.  In particular, SignatureLink argued at the hearing only that its source code was protected by the trade secret privilege.

"A party who fails to file timely objections waives all objections, including those based on privilege or work product." *Ramirez v. County of Los Angeles,* 231 F.R.D. 407, 409 (C.D. Cal. 2005); *see also Horace Mann Ins. Co. v. Nationwide Mut. Ins. Co.,* 238 F.R.D. 536, 538 (D. Conn. 2006) (holding untimely assertion of attorney-client privilege waived when asserted twenty-two days late, without a privilege log, and dispute by its very nature involved communications between battling insurance companies and their lawyers); *Pham v. Hartford Fire Ins. Co.,* 193 F.R.D. 659 (D. Colo. 2000) (finding claim of privilege waived where the defendant failed to file objections to interrogatories until 71 days after the interrogatories were served); *Smith v. Conway Org., Inc.,* 154

F.R.D. 73, 76 (S.D. N.Y. 1994) (deeming waived a work-product objection asserted nearly four months after the document request was served).

Even if the Court were to reach the merits, SignatureLink is not entitled to the trade secret privilege. The Federal Rules require a party invoking privilege to:

> [D]escribe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

Fed.R.Civ.P. 26(b)(5). The burden is on the party claiming the privilege to establish those facts that are the essential elements of the privileged relationship or matter. *CSX Transportation, Inc. v. Admiral Insurance Company, Inc.*, 1995 WL 855421, *1 (M.D. Fla. 1995) (quoting *Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 470 (S.D. N.Y. 1993)); *AARP v. Kramer Lead Marketing Group*, 2005 WL 1785199, *3 (M.D. Fla. 2005).

SignatureLink asserts the trade secrets privilege for the source code for the signature capture software. A "trade secret" as defined in § 688.002 of the Florida Uniform Trade Secrets Act is: "information, including a formula, pattern, compilation, program, device, method, technique, or process" that "(A) [d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use;" and "(B) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." FLA. STAT. § 688.002(4)[5].

---

[5] Third Party contends that the allegedly copyrighted work that SignatureLink claims is protected by the trade secret privilege has already been publicly displayed "as early as October 1, 2002" on various companies' websites, according to SignatureLink's own allegations. *See* Doc. No. 54 ¶ 26. Third Party argues that website publication of the work at issue would pre-date the submission of an application for copyright protection for the work to the U.S. Copyright Office which occurred on or about December 30, 2004. Doc. 54, Ex. 1. SignatureLink's counsel at the April 16 hearing disputed that the full source code was ever accessible via the internet. *See* Doc. No. 70 at 13 n.1.

> Under Florida law, trade secret protection is governed by Fla. Stat. 90.506 which states:
>
> A person has a privilege to refuse to disclose, and to prevent other persons from disclosing, a trade secret owned by that person if the allowance of the privilege will not conceal fraud or otherwise work injustice. When the court directs disclosure, it shall take the protective measures that the interests of the holder of the privilege, the interests of the parties, and the furtherance of justice require. The privilege may be claimed by the person or the person's agent or employee.

Fla. Stat. 90.506. When a trade secret privilege is asserted as a basis for resisting production, the district court must determine whether the information at issue actually constitutes a trade secret. *Del Monte Fresh Produce Company v. Dole Food Company*, 148 F.Supp.2d 1322, 1324 (S.D. Fla. 2001). If it does, the court must require the party seeking production to show reasonable necessity for the requested materials. *Id.* The party claiming the privilege has the burden to show "good cause" for protecting or limiting discovery by demonstrating that the information sought is a trade secret and that disclosure may be harmful. *Id.* (citing *American Express Travel Related Services, Inc. v. Cruz*, 761 So.2d 1206 (Fla. 4th DCA 2000)).

Copyrighting intellectual property does not automatically vitiate its trade secret status. *Computer Associates Intern., Inc. v. American Fundware, Inc.*, 831 F.Supp. 1516, 1529 (D. Colo. 1993) (citing 2 Melvin F. Jager, *Trade Secrets Law* § 10.02). The Copyright Act defines a computer program as "a set of statements or instructions to be used directly or indirectly in a computer in order to bring about a certain result." *Liberty American Ins. Group, Inc. v. WestPoint Underwriters, L.L.C.*, 199 F.Supp.2d 1271, 1289 (M.D. Fla. 2001) (citing 17 U.S.C. § 101). Under this Act, the literal elements of computer programs – their source and object codes – are subject to copyright protection. *Id.* (citing *Computer Assoc. Intl., Inc. v. Altai, Inc.,* 982 F.2d 693, 702 (2d Cir. 1992)). "Generally, a computer program is written by a programmer using 'source code,' a computer language that uses a combination of words, symbols, and numbers that are meaningful to a trained programmer. The

source code is then compiled by a computer into 'object code,' a binary machine language appearing as a series of 0's and 1's that is unintelligible to even a trained human observer. A computer runs a program using object code." *Data General Corp. v. Grumman Systems Support Corp.,* 825 F.Supp. 340, 354 (D. Mass. 1993); *see also Mitek Holdings, Inc. v. Arce Engineering Co.,* 89 F.3d 1548, 1556 n. 15 (11th Cir. 1996) (source code is a symbolic language that humans can read and object code is a translation of the source code into a series of zeros and ones that is readable by a computer).

To establish a claim of copyright infringement, SignatureLink will be required to prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Bateman v. Mnemonics, Inc.,* 79 F.3d 1532, 1541 (11th Cir. 1996) (quoting *Feist Publications, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991). To "satisfy *Feist*'s first prong, a [copyright holder] must prove that the work . . . is original and that the [copyright holder] complied with applicable statutory formalities." *Id.* (quoting *Lotus Dev. Corp. v. Borland Int'l, Inc.,* 49 F.3d 807, 813 (1st Cir.1995), *aff'd by an equally divided Court,* 516 U.S. 233 (1996)).

One of the disputes in this case is whether SignatureLink has complied with the statutory formalities to properly register its copyright for the Internet Signature Capture Source Code. To properly register a claim of copyright, the Copyright Office requires an applicant to submit a completed application form, the statutory fee, and an appropriate deposit of the copyrighted work. *Data General Corp. v. Grumman Systems Support Corp.,* 825 F.Supp. 340, 356 (D. Mass. 1993) (citing 17 U.S.C.A. § 408(a)). Under the Code of Federal Regulations, the applicant may file a deposit copy that consists of "identifying portions" of the program:

> (vii) Computer programs and databases embodied in machine-readable copies other than CD-ROM format. In cases where a computer program, database, compilation, statistical compendium, or the like, if unpublished is fixed, or if published is published only in the form of machine-readable copies (such as magnetic tape or disks, punched cards, semiconductor chip products, or the like) other than a CD-ROM format, from

-8-

> which the work cannot ordinarily be perceived except with the aid of a machine or device, the deposit shall consist of:
>
> (A) For published or unpublished computer programs, one copy of *identifying portions of the program*, reproduced in a form visually perceptible without the aid of a machine or device, either on paper or in microform. For these purposes "identifying portions" shall mean one of the following:
>
> (1) The *first and last 25 pages or equivalent units of the source code if reproduced on paper*, or at least the first and last 25 pages or equivalent units of the source code if reproduced in microform, together with the page or equivalent unit containing the copyright notice, if any. If the program is 50 pages or less, the required deposit will be the entire source code.

37 C.F.R. § 202.20(c)(2)(vii)(A)(1) (emphasis added); *Quinn v. City of Detroit,* 988 F.Supp. 1044, 1052 (E.D. Mich. 1997) (holding that applicant did file a complete copy of source code with the United States Copyright Office by filing the first and last 25 pages of the source code).

> However, the process is more elaborate for source code containing trade secrets:
>
> (2) Where the program contains *trade secret material*, the page or equivalent unit containing the copyright notice, if any, plus one of the following: *the first and last 25 pages or equivalent units of source code with portions of the source code containing trade secrets blocked-out, provided that the blocked-out portions are proportionately less than the material remaining*, and the deposit reveals an appreciable amount of original computer code; *or the first and last 10 pages or equivalent units of source code alone with no blocked-out portions*; or the first and last 25 pages of object code, together with any 10 or more consecutive pages of source code with no blocked-out portions; or for programs consisting of, or less than, 50 pages or equivalent units, entire source code with the trade secret portions blocked-out, provided that the blocked-out portions are proportionately less than the material remaining, and the remaining portion reveals an appreciable amount of original computer code.

37 C.F.R. § 202.20(c)(2)(vii)(A)(2) (emphasis added).  The Copyright Office has also published Circular 61, "Copyright Registration for Computer Programs" which directs applicants – in accordance with the requirements of 37 C.F.R. § 202.20(c)(2)(vii)(A)(2) – to file either the first and last 25 pages of source code with portions containing trade secrets blocked out; or the first and last 10 pages of source code alone with no blocked out portions; or if less than 50 pages the entire source

code with the trade secret portions blocked out. *See* www.copyright.gov/circs/circ61.pdf. In addition, the Copyright Office requires that "[w]here a computer program contains trade secret material, [applicants] include a cover letter *stating that the claim contains trade secrets*." *Id*. (emphasis added).

William Hicks, who identifies himself as a "principal" of CattleDriver, LLC and SignatureLink, Inc., directly involved in the creation and development of the signature capture technology and the filing of the copyright application, states that "[i]n filing the copyright application, we did not file the complete source code. Instead we filed limited portions of the source [sic] to the extent we understood necessary without waiving trade secrets and proprietary interests." Doc. No. 71-2, Aff. of Hicks ¶ 4. Noticeably absent is a representation from Mr. Hicks that SignatureLink took steps to file the source code consistent with either 37 C.F.R.§ 202.20(c)(2)(vii)(A)(2) with the trade secrets redacted, or consistent with Circular 61's requirement of a cover letter stating that the claim contains trade secrets.

Merely filing less than the complete source code – in and of itself – is not sufficient to maintain the applicant's trade secrets since that is the requirement for source code without trade secrets. *See* 37 C.F.R. § 202.20(c)(2)(vii)(A)(1). Because SignatureLink has not produced either in Court or to Third Party Verification the "deposit copy" of the source code it filed with the Copyright Office, it has failed to show that it took the proper steps to redact the code it submitted to maintain the secrecy of its alleged trade secrets. *Cf. Data General*, 825 F.Supp. at 356 (for a computer program that contains trade secret material, the Copyright Office permits the deposit to take the form of a symbolic filing: the first and last ten pages of the source code); *see also Fonar Corp. v. Deccaid Servs., Inc.,* 983 F.2d 427, 428 (2d Cir. 1993) (copyright deposit contained only the first 29 pages and last 34 pages of a printout of the programs' source code redacted to eliminate trade secrets).

SignatureLink's counsel stated at the hearing, when queried by the Court, that SignatureLink had not submitted a cover letter with its copy of the source code.

Third Party Verification independently obtained a copy of the deposit source code through the public request process in June 2006. *See* Doc. No. 72-15. The deposit source code, entitled "Internet Signature Capture Source Code," is only two pages long and contains not a single redaction. Doc. No. 72-15. Moreover, SignatureLink's counsel stated that he had learned just one week prior to the April 16, 2007 hearing – eight months after the August 2006 discovery request for the source code – that the CD-ROM SignatureLink intended to deposit containing the last 25 pages of source code was *not* on deposit at the Copyright Office. The Court is mystified why counsel or his client would wait until eight month after being served with discovery concerning the copyrighted material, four months after an order compelling its discovery, and just *one week* before a hearing on this specific issue, to find out the status of SignatureLink's Copyright Office deposit copy and/or registration.

According to SignatureLink's current counsel and notations on the copyright registration documents, a company called LegalZoom[6] – a "legal documentation service" – filed (or, in this case, perhaps misfiled a portion of) SignatureLink's deposit. *See also* Doc. No. 54-2 (registration listing "LegalZoom.com" as owner of account paying registration fee). Regardless of the reason why the CD-ROM is not on file, the fact of the matter is that it is not currently part of Registration TX 6-096-025 for SignatureLink's "Internet Signature Capture Source Code." Doc. No. 54-2 (att. Second Amended Counterclaim); Doc. No. 72-15.

---

[6]LegalZoom.com, according to its website, is a legal documentation service that helps consumers "create reliable legal documents from [their] home or office." *See* legalzoom.com. The site prides itself on allowing consumers to "take care of common legal matters – without an attorney." *Id.*

The Court has already sanctioned SignatureLink once before for its failure to respond to Third

Party Verification's discovery.  Doc. No. 49.  As the Court warned SignatureLink at the time:

> Rule 37(b)(2) provides a range of sanctions that a district court may impose upon
> parties and their attorneys for failure to comply with the court's discovery orders. It
> provides that the court, in its discretion, may impose, among others, the following
> sanctions: (1) *the court may order that disputed facts related to the violated order be*
> *considered established in accordance with the claim of the party obtaining the*
> *sanctions order*; (2) the court may refuse to permit the violating party to raise certain
> defenses, or it may prohibit that party from opposing certain claims or defenses of the
> party obtaining the sanctions order; (3) the court may strike any pleadings or any parts
> of the pleadings of the violating party, stay the proceedings, or even dismiss the action
> or enter a judgment of default against the violating party; and (4) the court may
> consider the violation a contempt of court.

Doc. No. 49 at 2 (citing Fed. R. Civ. P. 37 – emphasis added).  Accordingly, as a sanction for

SignatureLink's delay and recalcitrance for eight months in producing any form of its source code –

which could have been the deposit copy, a redacted, putative "trade-secret" copy, or a complete copy

from its own files (filed under seal with the Court) – SignatureLink will be limited in pursuing its

copyright counterclaim to the **two pages of source code** that is undisputably on file with the Library

of Congress.  *See* Doc. No. 72-15.  Moreover, even if SignatureLink is able to prove that a CD-ROM

of its code was provided to the document processor, LegalZoom.com, but inadvertently not filed with

the Copyright Office, SignatureLink will be foreclosed from relying on any source code from that CD-

ROM as a sanction for its eight-month delay in uncovering the CD-ROM's omission *and* its failure

to produce the CD-ROM in some form (redacted, deposit copy, or sealed version for the Court) in

response to the numerous discovery motions filed by Third Party Verification.

The basis for SignatureLink's expert's opinion on its copyright counterclaim will be limited

to the **two pages of source code** that is undisputably on file with the Library of Congress.  *See* Doc.

No. 72-15.  SignatureLink is **ORDERED** to provide a revised expert report via fax or hand-delivery

based on this ruling by **May 8, 2007.**

Third Party Verification's expert disclosure deadline (Doc. No. 74) is extended until **June 8, 2007**; and the deadline for Third Party Verification to respond to other pending discovery requests already served by SignatureLink (Doc. No. 79) is extended until **June 1, 2007.**  The discovery deadline is extended **for Third Party Verification ONLY** until August 20, 2007.

These extensions in no way relieve the parties of other obligations and deadlines set forth in the Case Management and Scheduling Order (Doc. No. 31).  Further, this extension shall not be the basis for seeking relief from that Order. The parties are reminded that the deadline for filing of dispositive motions is **NOT** extended but remains August 31, 2007 and the trial date will **NOT** be continued, but remains January 2, 2008.

To the extent Third Party Verification seeks its attorney's fees incurred bringing its Motion to Compel and ancillary discovery extension motions, the request is **DENIED** without prejudice to its refiling at the close of discovery, depending on circumstances as they exist at that time.

**DONE** and **ORDERED** in Orlando, Florida on May 2, 2007.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record