# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**THIRD PARTY VERIFICATION, INC.,**

**Plaintiff,**

**-vs-**                                             **Case No.  6:06-cv-415-Orl-22DAB**

**SIGNATURELINK, INC.,**
**CATTLEDRIVER, L.L.C., and DAVID**
**LISCUM,**

**Defendants.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on the following motion filed

herein:

| | |
|---|---|
| **MOTION:** | **DEFENDANT DAVID LISCUM'S MOTION TO DISMISS COUNTS II THROUGH VI OF PLAINTIFF'S FIRST AMENDED COMPLAINT (Doc. No. 52)** |
| **FILED:** | **December 13, 2006** |

**THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

| | |
|---|---|
| **MOTION:** | **DEFENDANT SIGNATURELINK, INC.'S MOTION TO DISMISS COUNTS II THROUGH VI OF PLAINTIFF'S FIRST AMENDED COMPLAINT (Doc. No. 53)** |
| **FILED:** | **December 13, 2006** |

**THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S MOTION TO DISMISS COUNTS II AND III OF DEFENDANT'S SECOND AMENDED COUNTERCLAIM (Doc. No. 59)** |
| **FILED:** | **January 17, 2007** |

**THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

Plaintiff Third Party Verification is suing Defendants SignatureLink, CattleDriver, and Dave Liscum for a declaratory judgment that it is not infringing copyrights, patents, or other intellectual property rights in "SignatureLink Web Signature Software" that captures signatures for online transactions.  Doc. No. 48   ¶¶ 5-7.  SignatureLink contends in its counterclaim for copyright infringement that Third Party Verification acquired a copy of SignatureLink's source code, copied the program to suit their own needs via "reverse engineering" of the software, and sold it as "AssureSign Electronic Signature Technology."  Doc. No. 54 ¶¶ 22, 23, 25.

SignatureLink and Liscum moves to dismiss Counts II through VI of ThirdParty's Amended Complaint for false marking, false advertising, misleading advertising, unfair competition and deceptive and unfair trade practices.  Doc. Nos. 52, 53.  Third Party moves for dismissal of Counts II and III of SignatureLink's Amended Counterclaim for misleading advertising and unfair competition.  Doc. No. 59.

**Procedural History**

Third Party Verification filed this suit for declaratory relief against SignatureLink on April 4, 2006.  Defendants served their original Answer and Counterclaim on July 12, 2006.  Doc. No. 23. On July 31, 2006, Plaintiff served its Motion to Dismiss or Strike Defendants' Counterclaim.  Doc. No. 24.  Defendants filed an Amended Counterclaim on August 14, 2006. Doc. No. 27.  The Court denied Plaintiff's Motion to Dismiss without prejudice with leave to refile in response to the Amended

Counterclaim.  Doc. No. 30.  Plaintiff filed a Motion to Dismiss the Amended Counterclaim.  Doc. No. 32. Defendants then filed a Response and Opposition to Plaintiff's Motion to Dismiss Amended Counterclaim, to which they attached certain unauthenticated exhibits concerning ownership of the copyright at issue. Doc. No. 39.  Plaintiff filed a Motion to Strike the exhibits (Doc. No. 43); the Court denied the Motion to Strike and Motion to Dismiss Amended Counterclaim and permitted the Defendants to file a Second Amended Counterclaim with leave for Plaintiff to refile another motion to dismiss if appropriate.  Doc. Nos. 45-46.

The parties stipulated that Plaintiff would file a First Amended Complaint (*see* Doc. No. 47), which Plaintiff filed on November 17, 2006.  Doc. No. 48.  Defendants Liscum and SignatureLink each filed separate Motions to Dismiss Counts II through VI of Plaintiff's First Amended Complaint. Doc. Nos. 52, 53. Defendant SignatureLink also filed an Answer to Count I of Plaintiff's First Amended Complaint and its Second Amended Counterclaim against Plaintiff.  Doc. No. 54.  Third Party filed a Motion to Dismiss Counts II and II of SignatureLink's Second Amended Counterclaim on January 17, 2007.  Doc. No. 59.

**Background Facts**[1]

According to SignatureLink, the volume and popularity of on-line, e-commerce Internet shopping has created a need for fraud prevention systems; internet transactions are uniquely challenging because the customer is not in the physical presence of the merchant or contracting party and the customers' identities cannot be verified in person in order to prevent fraud and its consequent losses.  Doc. No. 54 ¶ 7.  SignatureLink's Internet Signature Capture records and digitally "captures"

---

[1]The facts are either undisputed or read in the light most favorable to each of them on the opposing party's motion to dismiss.

signatures and records proofs of purchases in e-commerce transactions over the Internet.  Doc. No. 54 ¶ 8.

Third Party Verification is a competitor of Defendants SignatureLink, CattleDriver, and Liscum.  Doc. No. 48 ¶ 3.  SignatureLink threatened to initiate litigation against Third Party Verification asserting that SignatureLink possessed enforceable intellectual property rights, specifically copyrights, in its Internet Signature Capture Software.  *Id*. ¶ 5; Doc. No. 54 ¶ 4. SignatureLink alleges that Third Party's activities "violate SignatureLink's patent and other intellectual property rights to its technology."  Doc. No. 48 ¶¶ 6-77.  Third Party contends that SignatureLink does not possess any enforceable patent rights.  *Id*. ¶ 8.

Third Party also contends that although SignatureLink indicated it has "several copyrights" and "other intellectual property rights" that Plaintiff infringed, SignatureLink does not actually own a registered copyright.  Doc. No. 48 ¶ 10.  According to SignatureLink, CattleDriver initially registered the copyright entitled, "SignatureLink Internet Signature Capture," Copyright Registration No. TX-6-096-025, on January 10, 2005, but SignatureLink became the owner of the copyright as of July 12, 2005 when CattleDriver and its investors assigned their interests to SignatureLink.  Doc. No. 54 ¶ 5; Doc. No. 54-2 at 4-13[2].  The assignment from Cattledriver to SignatureLink was recorded with the Copyright Office on November 3, 2006.  Doc. No. 54 ¶ 5; Doc. No. 54-2 at 14-18.

Third Party denies any infringement and alleges that Defendants SignatureLink and Liscum[3] have authored and circulated documents in interstate commerce that contain false or misleading information.  Doc. No. 48 ¶ 14.

---

[2]Although the Agreement has a July 12, 2005 effective date, it was not signed until November 8, 2006.

[3]Liscum adopted the Motion to Dismiss of SignatureLink and filed his own Motion as to Third Party's failure to state a claim against him individually.

According to SignatureLink, the source code for SignatureLink Internet Signature Capture (which embodies the computer commands that create the web page the user accesses) was accessible to Internet Explorer browser users; SignatureLink alleges Third Party acquired a copy of SignatureLink's copyrighted source code and "reverse engineered" the software in order to determine the manner in which the software operated, then developed a duplicate source code to create a web signature software program under the name "AssureSign Electronic Signature Technology." Doc. No. 48 ¶¶ 11-14.

For its part, SignatureLink alleges Third Party is improperly marketing its AssureSign Electronic Signature Technology product. Doc. No. 54 ¶ 15-17.

**Standard of Review**

A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that a plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41 45-46 (1957); *Harper v. Blockbuster Entertainment Corp.,* 139 F.3d 1385, 1387 (11th Cir. 1998). A trial court, in ruling on a motion to dismiss, is required to view the complaint in the light most favorable to the Plaintiff. *Beck v. Deloitte & Touche,* 144 F.3d 732, 735 (11th Cir. 1998). In seeking dismissal for failure to state a viable claim, a defendant thus bears the "very high burden" of showing that the plaintiff cannot conceivably prove any set of facts that would entitle him to relief. *Id.*

**Analysis**

SignatureLink and Liscum moves to dismiss Counts II through VI of ThirdParty's Amended Complaint for Count II - false marking in violation of 35 U.S.C. § 292, Count III- false advertising in violation of 15 U.S.C. § 1125(a), Count IV - misleading advertising in violation of Fla. Stat. § 817.41, Count V - Florida common law of unfair competition and Count VI - deceptive and unfair trade practices in violation of Fla. Stat. § 501.201. Doc. Nos. 52, 53. Third Party moves for dismissal

of Counts II - statutory misleading advertising and Count III for common law unfair competition of SignatureLink's Amended Counterclaim for misleading advertising and unfair competition. Doc. No. 59.

### Misleading Advertising

A consumer party may state a claim for statutory misleading advertising under Florida law by pleading that the party relied on some identifiable alleged misleading advertising plus, where appropriate, all of the other elements of the common law tort of fraud in the inducement, as follows: (a) the representor made a misrepresentation of a material fact; (b) the representor knew or should have known of the falsity of the statement; (c) the representor intended that the representation would induce another to rely and act on it; and (d) the plaintiff suffered injury in justifiable reliance on the representation. *Smith v. Mellon Bank*, 957 F.2d 856, 858 (11th Cir. 1992); *Joseph v. Liberty National Bank*, 873 So.2d 384, 388 (Fla. 5th DCA 2004); *Vance v. Indian Hammock Hunt & Riding Club, Ltd.*, 403 So.2d 1367, 1370 (Fla. 4th DCA 1981). The pleader must also allege that the representor's representation was made with the intent or purpose, either directly or indirectly, of selling or disposing of real or personal property, services of any nature whatever, professional or otherwise, or to induce the public to enter into any obligation relating to such property or services. *Samuels v. King Motor Company of Fort Lauderdale*, 782 So.2d 489, 496 (Fla. 4th DCA 2001).

The statutory term "misleading advertising" as defined in Florida Statute § 817.41(5)[4] includes any statements made or disseminated to the public in oral, written or other form which are

---

[4]Section 817.40(5), Fla. Stat. (1997) states:
The phrase "misleading advertising" includes any statements made, or disseminated, in oral, written, or printed form or otherwise, to or before the public, or any portion thereof, which are known, or through the exercise of reasonable care or investigation could or might have been ascertained, to be untrue or misleading, and which are or were so made or disseminated with the intent or purpose, either directly or indirectly, of selling or disposing of real or personal property, services of any nature whatever, professional or otherwise, or to induce the public to enter into any obligation relating to such property or services.

known or through the exercise of reasonable care, could have been ascertained, to be untrue or misleading and which were made or disseminated with the intent or purpose of selling goods or services or inducing the public to enter into an obligation relating to such goods or services.

Both parties in this case agree that, when the party alleging misleading advertising is a competitor of the defendant in selling the goods or services to which the misleading advertisement relates, an allegation of competition is permitted to "stand-in" for the element of direct reliance that a consumer is obligated to plead. *Workplace Corp. v. Office Depot, Inc.*, 1990 WL 106727 *1 (M.D. Fla. 1990) ("while [reliance] is a necessary element when the plaintiff is a consumer, it is not necessarily an element when the plaintiff is a competitor.")

SignatureLink argues that Third Party's misleading advertising allegations were based on nothing more than the difference between "patented" and "patent pending."  Doc. No. 53 at 6. SignatureLink contends "It is hard to imagine how such a distinction resulted in any 'misplaced reliance' on the part of either the Plaintiff or any consumers."  Doc. No. 53 at 6.  Other courts have held that misuse of the term "patent pending" could support a claim of false or misleading advertising. *See M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., Inc.,* 68 F.Supp.2d 494, 506 (D. N.J. 1999) (holding that using a patent number and the term "patent pending" would lead consumers to believe that either the product was covered by the patent or in the process of obtaining a patent, neither of which was true, and was evidence of a false statement under the Lanham Act), *reversed on other grounds*, 439 F.3d 1335 (3d Cir. 2006).

In an unpublished opinion by the Federal Circuit, *Abdallah v. Pileggi,* the Circuit offered guidance on the use of the word "patented" on a product for which a patent has not yet issued:

> The word "patented" has both a legal and a lay meaning. The legal definition is that the subject matter in question is covered by a valid patent. We realize that this is a legal conclusion dependent on a number of factors. If this were the only basis for

concluding that the challenged statements were literally false we would be cautious. The word also has a lay interpretation, however, that is largely undisputed. Webster defines "patented," the adjective, as "Protected by a patent." *Webster's II New College Dictionary* 805 (1995). The defendants have not offered, nor do we know of any other commonly accepted definition of patented that means "Protected by [claims in an allowed but not yet issued] patent." The lay definition is wholly compatible with the legal definition, and the defendants have not offered any competent evidence of a contrary definition, except the subjective, self-serving testimony of one of the defendants.

1998 WL 180491, *4 (Fed. Cir. 1998).

Both parties argue that the opposing party failed to properly allege reliance by consumers on the misleading advertising. However, both parties allege a claim of misleading advertising between competitors; thus, reliance is not necessarily an element that needs to be alleged or proven. *See Workplace Crop. v. Office Depot, Inc.*, 1990 WL 106727, *1 (M.D. Fla. 1990); Doc. No. 48 ¶ 3; Doc. No. 54 ¶¶ 13, 17, 19, 40; Doc. No. 66 at 10.

Specifically, Third Party averred that SignatureLink and Liscum misleadingly advertised that their "web-based digitized signature capture technology" product as patented and (as of August 2, 2005) that "there are no other companies that have online signatures"; these statements were misrepresentations of material fact that they knew or should have known were false; they intended others to rely upon for the purpose of selling the "web-based digitized signature capture technology"; and the statements were made in bad faith and with malice or reckless indifference to Third Party's and consumers' interests, who were damaged. Doc. No. 48 ¶¶ 36-43. Third Party states a *prima facie* claim for misleading advertising.

By the same token, SignatureLink's claim for misleading advertising also survives Third Party's motion to dismiss it. SignatureLink alleges: Third Party's representations and advertising claims that its process is "the only service-based, electronic, hand-written signature on the market" and that "never before has obtaining a signature on a document been so easy, so secure, so fast" were

untrue at the time they were made; Third Party knew the representations and advertising claims were untrue because SignatureLink's Internet Signature Capture software was on the market at the time; Third Party knew or should have known of the falsity of the statements and intended that the representation would induce customers to rely and to act on it; and SignatureLink has suffered damages.  Doc. No. 54 ¶¶ 16-17, 35-41.  SignatureLink also states a *prima facie* claim for misleading advertising.

*False Advertising*

To state a claim for false advertising under the federal Lanham Act, 15 U.S.C. § 1125(a), the party must allege: (1) the advertisements of the opposing party are false or misleading as to the party's own product of another's; (2) the advertisements actually deceived customers or had the tendency to deceive a substantial portion of the targeted audience; (3) the deception is material, meaning it is likely to influence purchasing decisions; (4) the defendant's advertised products traveled in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false or misleading advertisements by casually related declining sales or loss of goodwill. *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260-61 (11th Cir. 2004); *Warner-Lambert Co. v. Breathasure, Inc.,* 204 F.3d 87, 91-92 (3d Cir. 2000).

Third Party has pled a *prima facie* case of false advertising under the Lanham Act. Specifically, Plaintiff averred that SignatureLink and Liscum are competitors who sell a "web-based digitized signature capture technology" in interstate commerce which they advertise as patented and (as of August 2, 2005) "there are no other companies that have online signatures" which statements are false or misleading, made in bad faith, and deceived, or had the capacity to deceive, consumers; thus, having a material effect on consumer purchasing decisions and resulting in damages to Third Party.  Doc. No. 48 ¶¶ 27-35.

SignatureLink argues that *Border Collie Rescue, Inc. v. Ryan*, 418 F.Supp.2d 1330, 1346-47 (M.D. Fla. 2006) requires that a plaintiff is obligated to allege "more than bare allegations" in support of a Lanham Act claim. *Border Collie* is inapposite, in that it was decided in the context of a Rule 56 motion for summary judgment which has a more significant evidentiary burden. Third Party states a *prima facie* claim for false advertising under the Lanham Act.

*Unfair Competition*

Third Party moves to dismiss SignatureLink's claim for unfair competition, arguing (again) that SignatureLink fails to allege that they compete for a common pool of customers or the "extra element" required to avoid preemption by the Copyright Act. SignatureLink also moves to dismiss Third Party's claim for unfair competition, arguing that Third Party has not alleged that its product has been affected in any way or SignatureLink has been "palming off" or reverse "palming off" its products, or otherwise engaging in conduct that constitutes unfair competition. Doc. No. 53 at 8.

To a state a claim for unfair competition under Florida common law a party must plead (1) deceptive or fraudulent conduct of a competitor and (2) likelihood of consumer confusion. *M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486, 1494 (11th Cir. 1990); *Home Design Services, Inc. v. Park Square Enterprises, Inc.*, 2005 WL 1027370, *13-14 (M.D. Fla. 2005); *Whitney Information Network, Inc. v. Gagnon*, 353 F.Supp.2d 1208, 1212-13 (M.D. Fla. 2005). The Florida common law of unfair competition is an "umbrella for all statutory and nonstatutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters." *American Heritage Life Insurance Company v. Heritage Life Insurance Company*, 494 F.2d 3, 14 (5th Cir. 1974); *Chassis Master Corp. v. Borrego,* 610 F. Supp. 473, 479 (S.D. Fla. 1985).

Rather than going to the question of copying in the manufacture of a product, "unfair competition goes to the question of marketing." *BH Bonn Co. v. AAA Replacement Parts Co.*, 451

F.2d 1254, 1263 (5th Cir. 1971) (emphasis supplied).  To state claim for unfair competition, the pleading party must allege that it competes with its opponent for a common pool of customers. *Home Design Services, Inc. v. Park Square Enterprises, Inc.*, 2005 WL 1027370, *13-14 (M.D. Fla. 2005) (unfair competition claim failed because real or potential customer pool was not similar between architectural design firm that designed homes for builder clients and a homebuilder that designed and built homes for end-use homeowner clients).

Although  "palming off" or reverse "palming off" are types of unfair competition, the tort is not so limited in Florida.  *See, e.e., Alphamed Pharmaceuticals Corp. v. Arriva Pharmaceuticals, Inc.*, 432 F.Supp.2d 1319, 1353 (S.D. Fla. 2006) (unfair competition under Florida law can include business interference, and misrepresentation). Third Party's Amended Complaint describes the alleged misrepresentations by SignatureLink and Liscum and the specific product to which the misrepresentations were directed.  Third Party alleges: SignatureLink and Liscum engaged in deceptive and fraudulent conduct by advertising that their "web-based digitized signature capture technology" product is patented and (as of August 2, 2005) "there are no other companies that have online signatures," which they knew or should have known to be false, that others would be induced to rely and act on them; they caused or were likely to cause consumer confusion; and they were made in bad faith and with malice or reckless indifference to the Plaintiff's and consumer's interests, to Plaintiff's detriment.  Doc. No. 48 ¶¶ 44-50.  Third Party states a claim for unfair competition under Florida common law, having alleged the extra elements of consumer confusion and the deceptive conduct of a competitor, SignatureLink and its principal Liscum.

Third Party argues that SignatureLink fails to allege that they compete for a common pool of customers or an "extra element" required to avoid preemption by the Copyright Act.  SignatureLink does allege that it is in competition for a common pool of customers with Third Party several places

in the Second Amended Counterclaim, *see* Doc. No. 54 ¶¶ 13, 19, 40, 44 (sale of competing signature guarantee product), and "deceptive and fraudulent conduct by a competition." *See* Doc. No. 54 ¶¶ 14-18, 20, 45. SignatureLink also alleges that Third Party's conduct "created a likelihood of customer confusion." Doc. No. 54 ¶ 45-46. SignatureLink more specifically identified the allegedly misleading advertisements, or deceptive conduct, by incorporation. Doc. No. 54 ¶ 43. Both parties state adverse claims for unfair competition under Florida law.

*False Marking*

SignatureLink moves to dismiss Third Party's claim of false marking in violation of 35 U.S.C. § 292, which says "Whosoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article the word 'patent' or any word or number importing the same is patented, for the purpose of deceiving the public" shall be fined $500 per offense." Such a claim is brought as a *qui tam* action and "any person is permitted to sue for the $500 penalty, and if successful would be entitled to one-half of that penalty." A pleader may establish a *prima facie* case of false marking under the statute by alleging that: (1) an article was falsely marked or advertised with the word "patent" or any word or number that imports that the article is patented, (2) the article so marked or advertised was an unpatented article, and (3) the marking or advertisement was made with the intent to deceive the public. *Clontech Labs, Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1352 (Fed. Cir. 2005).

Third Party alleges that SignatureLink and Liscum have falsely used in advertising the words "patent" and "patented" importing that their "web-based digitized signature capture technology" product is patented. Doc. No. 48 ¶ 22. For purposes of the Motion to Dismiss the false marking claim, the Court must view as true Third Party's allegation that SignatureLink's "web-based digitized signature capture technology" product is unpatented; the word "patent" was intended to deceive the public; and was done in bad faith. Doc. No. 48 ¶¶ 23-25. *See Abdallah v. Pileggi,* 1998 WL 180491,

*4 (Fed. Cir. 1998) (holding that the lay meaning of "patented" does not include claims for products protected by "claims in an allowed but not yet issued patent").  Third Party Verification has pled a *prima facie* case of false marking.

The Federal Circuit has not held whether § 292 of the Patent Act, for false marking, preempts state law unfair competition claims when there is a marking of product.  *D.P. Wagner Manufacturing, Inc. v. Pro Patch Systems, Inc.*, 434 F.Supp.2d 445, 460-61 (S.D. Texas 2006).  However, the Federal Circuit has held, "to avoid preemption, 'bad faith must be alleged and ultimately proven, even if bad faith is not otherwise an element of the tort claim.' " *Globetrotter Software, Inc. v. Elan Computer Group, Inc.,* 362 F.3d 1367, 1374 (Fed. Cir. 2004) (citing *Zenith Elecs. Corp. v. Exzec, Inc.,* 182 F.3d 1340, 1355 (Fed. Cir.1999)). Third Party specifically alleges that SignatureLink's false marking was done in bad faith.  Doc. No. 48 ¶¶ 25.  Third Party states a *prima facie* claim for false marking under the Patent Act.

### Deceptive and Unfair Trade Practices

SignatureLink moves to dismiss Third Party's DUTPA claim because Third Party fails to specify the period of time of the advertisement that claimed its patent pending product was patented, and, according to SignatureLink, can hardly constitute a deceptive trade "practice."  Doc. No. 53 at 8.

To state a claim for Deceptive and Unfair Trade Practices under Florida law, a party must plead (1) a deceptive act or unfair practice, (2) causation, and (3) actual damages or aggrievement.  *See* FLA. STAT. 501.201; *Grillasca v. Amerada Hess Corporation*, 2006 WL 3313719, *4 (M.D. Fla. Nov. 14, 2006).  A deceptive act is one that is "likely to mislead" consumers; the pleader need not plead any reliance on the part of the consumer.  *Id.*  An unfair practice is one that offends established

public policy and that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. *Id.* The Florida DUTPA was amended as of July 1, 2001 to allow a broader class of persons to bring claims under the statute. *See Advanced Protection Technologies, Inc. v. Square D Company*, 390 F.Supp.2d 1155, 1164-65 (M.D. Fla. 2005); *American Honda Motor Co., Inc. v. Motorcycle Information Network, Inc.*, 390 F.Supp.2d 1170, 1176-77 (M.D. Fla. 2005).

Third Party alleges that SignatureLink and Liscum have engaged in deceptive and unfair trade practices by advertising that their "web-based digitized signature capture technology" product is patented and that as of August 2, 2005 "there are no other companies that have online signatures," statements which they knew or should have known was false; they intended that the misrepresentations would induce another to rely and act on them; and the misrepresentations violate standards of unfairness and deception set forth in federal and state statutes which proscribe unfair methods of competition or deceptive practices; they have misled the consuming public concerning the nature and legal status of the "web-based digitized signature capture technology" product and the existence of competitive products to the consuming public's and Plaintiff's detriment. Doc. No. 48 ¶¶ 52-56. Third Party states a claim under Florida DUTPA.

*Application of Federal Rule of Civil Procedure 9 to various claims*

Federal Rule of Civil Procedure 9 requires that allegations of fraud be stated with particularity. Fed. R. Civ. P. 9. SignatureLink contends that several of Third Party's claims have elements of deceit or bad faith and, thus, like a fraud claim, require pleading with particularity.

SignatureLink contends that, because the false marking statute is penal and requires a showing of an intent to deceive, it must be pled with particularity, citing *Laughlin Products v. ETS, Inc.*, 257 F.Supp.2d 863 (N.D. Tex. 2002), *aff'd*, 68 Fed. Appx. 976 (Fed. Cir. 2003) and Federal Rule of Civil

Procedure 9.  *Laughlin* is inapposite since it was decided on a summary judgment motion for lack of evidence, which is not an issue here.  There is no case law that has required the Rule 9 level of pleading to claims for false marking.

SignatureLink also contends that Rule 9's heightened pleading standard also applies to Third Party's DUTPA claims. However, at least one federal court sitting in Florida has held that the Rule 9(b)'s requirement does not apply if the DUTPA claim is not predicated on allegations of fraud. *State of Florida, Office of the Attorney General, Depart. Of Legal Affairs v. Tenet Healthcare Corp.*, 420 F.Supp.2d 1288, 1309-11 (S.D. Fla. 2005) (denying motion to dismiss "because FDUTPA was enacted to provide remedies for conduct outside the traditional reach of common law torts such as fraud").

SignatureLink also argues that Third Party's unfair competition claim does not rise to the level of particularity required by Rule 9.   However, SignatureLink fails to cite any law whatsoever that such claims must meet Rule 9's standards.

Third Party's claims must only meet the requirements of Rule 8 of the Federal Rules of  Civil Procedure, which requires that the complaint contain "a short and plain statement of the grounds upon which the court's jurisdiction depends" and "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8.

*Liscum's Motion to Dismiss individual claims against him*

Liscum contends that Third Party has not alleged any factual basis for including him or facts that would render Liscum an alter ego of SignatureLink, or justification for piercing the corporate veil. Doc. No. 52 at 3.  Liscum argues that, although Third Party refers to the product as "the 'web-based digitized signature capture technology' product" throughout the Amended Complaint, there is no

allegation that identifies the advertising, no allegation establishing that Liscum has any interest in the product, and not even an allegation explaining his relationship with SignatureLink.

As Third Party points out, individuals and corporations may be liable for violations of the Lanham Act. *Chanel, Inc. v. Italian Activewear of Florida, Inc.*, 931 F.2d 1472, 1477-78 (11th Cir. 1991) (affirming trial court ruling that found an individual who was an officer of a corporate defendant and who advertised goods in a misleading and infringing manner to be personally liable under the Lanham Act). Third Party specifically alleged that Liscum authored and circulated documents in interstate commerce that contained false or misleading information, and that such activity gave rise to the allegations in the Amended Complaint; such claims are sufficient. *See*, *e.g., Babbit Electronics, Inc. v. Dynascan Corporation*, 828 F.Supp. 944, 960 (S.D. Fla. 1993) ("[A] corporate officer who directs, controls, ratifies, participates in, or is the moving force behind the infringing activity, is personally liable for such infringement without regard to piercing the corporate veil."). Third Party has sufficiently pled that Liscum actually participated in and caused acts to occur in violation of the statutes and common law which are the basis of the claims in the Amended Complaint.

The pending motions to dismiss should be denied.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully recommended in Orlando, Florida on May 23, 2007.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record